UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MANUEL ORTIZ,  )<br>Petitioner )<br>  )<br>vs. )<br>  )<br>BURL CAIN, )<br>Warden, )<br>Louisiana State Penitentiary )  | Case No. 12-cv-2310<br><br>SECTION: H(4)<br><br>JUDGE MILAZZO |

## ORDER AND REASONS

This Court previously ruled on the State's procedural objections to the Petitioner's claims (Doc. 80), but the State has belatedly raised five additional procedural objections (Doc. 86). Because the State has not expressly waived these objections, the Court finds that they are properly raised.[1] Accordingly, the Court will consider each objection individually.

## BACKGROUND

Petitioner Manuel Ortiz is a convicted felon incarcerated at the Louisiana State Penitentiary. He was convicted in 1994 for the murder of his wife Tracie Williams Ortiz and her friend Cheryl Mallory. The jury recommended a sentence of death, and Petitioner was formally sentenced to death by lethal injection. On appeal, the Louisiana Supreme Court found insufficient evidence to support a first-degree murder conviction for the death of Mallory. Accordingly, the Court set aside Petitioner's conviction of first-

---

[1] Under 28 U.S.C. § 2254(b)(3), "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."

1

degree murder and his death sentence for the murder of Mallory. The court rendered a judgment of conviction for second-degree murder. On this count, the court imposed a sentence of life imprisonment.

Petitioner filed a petition for post-conviction relief in state court, assigning fourteen claims of error. The court granted Petitioner's prosecutorial misconduct claim and denied his remaining claims. Though Petitioner's convictions were left undisturbed, his death sentence was set aside. Both Petitioner and the State sought supervisory writs to the Louisiana Supreme Court. The court granted the State's application but denied Petitioner's. On January 29, 2013, the Louisiana Supreme Court reversed the decision and reinstated Petitioner's death sentence. The United States Supreme Court denied certiorari on October 7, 2013, and the denial of Petitioner's post-conviction relief application became final on November 1, 2013.

Proceedings in this Court began on September 18, 2012 when Petitioner filed the instant Petition for Writ of Habeas Corpus. The proceedings were stayed during the pendency of the proceedings at the Louisiana Supreme Court. The Court lifted the stay on January 7, 2015. Petitioner then sought the discovery of files held by the FBI regarding this case. Finding good cause, the Court granted Petitioner's Motion for Discovery on April 23, 2016. After completing discovery, Petitioner filed an amended petition on December 1, 2016. The State initially lodged procedural objections to several of Petitioner's claims, arguing that they are procedurally defaulted and should not be considered by this Court. The Court ruled on these. Now, the Court will consider the belated objections that the State has lodged.

## **LEGAL STANDARD**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must fully exhaust his remedies in state court before seeking habeas relief from a federal court. "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."[2] To demonstrate exhaustion, "a petitioner must fairly present his legal claim to the highest state court in a procedurally proper manner."[3] "The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition."[4] For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court.[5] The exhaustion requirement "is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."[6] Furthermore, a claim is not fairly presented to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised.[7]

Related to the exhaustion requirement is the doctrine of procedural default, a separate but distinct limit on the availability and scope of federal habeas review.[8] "Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the

---

[2] O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).
[3] Nickleson v. Stephens, 803 F.3d 748, 753 (5th Cir. 2015) (internal citations omitted).
[4] *Id.*
[5] Baldwin v. Reese, 541 U.S. 27, 32 (2004).
[6] Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998).
[7] *Id.* at 32.
[8] *See* Nobles v. Johnson, 127 F.3d 409, 420–23 (5th Cir.1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845 (1998).

3

dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."[9] In the event of a procedural default, a federal court may only consider a claim if either (1) the petitioner demonstrates cause for the default and resulting prejudice, or (2) the failure to consider the claim would result in a fundamental miscarriage of justice.[10]

## LAW & ANALYSIS

Respondent avers that the following claims are procedurally defaulted and should not be considered by this Court:

(1) Claim IV(A)(1), alleging that the State withheld information that Carlos Saavedra was incarcerated at the time of his testimony;

(2) Claim IV(A)(2)(d), alleging that the State withheld information that they had investigated but failed to corroborate Carlos Saavedra's claim that Manuel Ortiz was working with an "insider" in the insurance industry who could insure a person without that person's knowledge;

(3) Claim IV(A)(2)(H), alleging that the State withheld information that Tracie Williams Ortiz, and not Manuel Ortiz, was responsible for raising the benefits on her life insurance;

(4) Claim IX, alleging that the prosecution engaged in gross misconduct when it used arguments intended to inflame the prejudices of the jury; and

(5) Claim XI, alleging discrimination in the selection of the grand jury foreperson.

---

[9] Bledsue v. Johnson, 188 F.3d 250, 254 (5th Cir. 1999) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).
[10] Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

### I. Claim IV(A)(1), alleging that the State withheld information that Carlos Saavedra was incarcerated at the time of his testimony

In this claim, Petitioner avers that the State withheld the fact that shortly before trial began, its "star witness," Carlos Saavedra, was arrested and placed in custody at the St. Bernard Parish Jail for a criminal investigation. Petitioner alleges that the United States Customs Service was investigating Saavedra based on a report that he threatened to kill a Customs agent. Petitioner admits that his counsel had knowledge of the threat but states that he did not know of the criminal investigation or incarceration. Petitioner further avers that prosecutor Bodenheimer interceded for Saavedra, and the State withheld this fact as well. Petitioner asserts that the defense had no ability to question Saavedra about the incarceration to explore whether he was expecting favors in exchange for his testimony.

Respondent argues that this claim is procedurally defaulted. In its argument, Respondent is unclear as to whether it alleges a failure to exhaust or instead a dismissal by the state court based on a procedural rule. Respondent avers that the trial court barred defense counsel from questioning Saavedra about his threat to kill a Customs agent. In so ruling, the judge stated that the Code "does not permit you to talk about allegations of criminal conduct that did not result in a conviction." This evidentiary ruling was not raised on appeal, and the State argues that the failure to raise the issue renders the claim procedurally defaulted.

The Court finds that this evidentiary ruling was not an adjudication of the claim at issue. Accordingly, Petitioner did not need to raise this ruling on appeal to preserve this *Brady* claim for review.

In another unclear argument, the State asserts—evidentiary ruling aside—that the claim would nonetheless be barred by Petitioner's failure to

5

raise it in "the state proceeding"—presumably the post-conviction proceedings—because Petitioner's attorney had a tape and a transcript of Saavedra actually making the threat. Respondent asserts that the Petitioner did not use "the document"—presumably, the tape and the transcript—to make this claim and properly present it in the state proceedings.

Petitioner avers that the claim was properly litigated throughout the state post-conviction proceedings. He points to his Writ Application to the Louisiana Supreme Court, in which he asserted that "[a]t trial, prosecutors were aware that Saavedra had been arrested by the DEA shortly before trial and had been incarcerated for threatening the life of a federal agent." Petitioner further asserted that "*Brady* mandates the disclosure of pending criminal cases and prosecutable offenses committed by a witness and known by the State." Petitioner argued that "by preventing the defense from exposing Saavedra's biases, interests and motivations in testifying against Mr. Ortiz, the State stood in the shoes of [the] fact-finder and decided whether Saavedra could and should be trusted with the information he was giving."

The Court agrees with Petitioner that the State mischaracterizes Petitioner's claim for relief. The claim is not that the State failed to disclose that Saavedra threatened to kill a Customs agent. The claim is that the State failed to disclose that Saavedra was arrested and incarcerated for the threats and that Bodenheimer intervened on Saavedra's behalf. The Court is therefore not persuaded by Respondent's arguments that are too narrowly focused. Instead, the Court finds that Petitioner sufficiently presented the factual and legal basis of this claim to the Louisiana Supreme Court, rendering this claim exhausted and ripe for review by this Court.

6

II. **Claim IV(A)(2)(d), alleging that the State withheld information that it had investigated but failed to corroborate Carlos Saavedra's claim that Manuel Ortiz was working with an "insider" in the insurance industry who could insure a person without that person's knowledge**

In this claim, Petitioner alleges that the State failed to disclose that there was no corroboration of Saavedra's statement that Petitioner had an "insider" in the insurance industry who could insure someone without their knowledge. In addition to arguing that this claim does not state a constitutional violation, Respondent avers that this claim was not presented to the state courts and is therefore unexhausted and procedurally defaulted. In his Reply, Petitioner fails to direct the Court to any presentation of this claim to the Louisiana Supreme Court. As such, this Court finds that this claim is unexhausted and procedurally defaulted.

III. **Claim IV(A)(2)(H), alleging that the State withheld information that Tracie Williams Ortiz, and not Manuel Ortiz, was responsible for raising the benefits on her life insurance**

At trial, the State contended that Petitioner secured $900,000 in insurance coverage for the life of Tracie Ortiz, but Petitioner alleges that the State withheld the fact that Tracie Ortiz, not Manuel Ortiz, increased the benefits on her life insurance. Respondent states that it has been unable to determine that this claim has been presented in the state courts at any level, and that, if this is true, the claim is unexhausted and procedurally defaulted.

In his Reply, Petitioner argues that the claim is exhausted. He notes that he raised it in his Supplemental Petition for Post-Conviction Relief in the state proceedings—he asserted that whereas the State argued at trial that Ortiz's motive for hiring someone to kill his wife was to collect benefits on a life insurance policy, Bodenheimer argued in another case that Tracie Williams

7

Ortiz increased her benefits on her life insurance herself. Similarly, in his Writ, Petitioner asserted that the prosecutor "argued throughout the trial proceedings that Mr. Ortiz was responsible for increasing the life insurance policies on Mr. Ortiz's life," yet in a separate proceeding Bodenheimer argued that Tracie Williams Ortiz "was aware of the policy increases because she had contracted them for herself." In a footnote in his Reply, Ortiz notes that these allegations were not made within a *Brady* claim, though he states that they are "allegations of suppressed information regarding Williams's role in increasing the benefits on the life insurance policy."

Indeed, in his Writ, Petitioner alleged prosecutorial misconduct and conflict of interest, and he wrote that "[t]he trial court did not err in setting aside the Petitioner's death sentence for creating a conflict of interest *and not disclosing that conflict to the defense*." (emphasis added). Accordingly, in his Writ before the Louisiana Supreme Court, Petitioner did raise the issue of the State's suppression of information relating to Bodenheimer's representation of the victims' families. Because Petitioner sufficiently raised the factual and legal basis of this claim before the Louisiana Supreme Court, this claim is not procedurally defaulted. Instead, it is exhausted and ripe for review.

### IV. Claim IX, alleging that the prosecution engaged in gross misconduct when it used arguments intended to inflame the prejudices of the jury

In this claim, Petitioner avers that his conviction should be overturned in light of repeated improper comments made by the prosecution during closing arguments in the guilt and penalty phases of the trial. Respondent argues that the claim is procedurally defaulted because Petitioner's counsel failed to timely raise objections, with one exception, to the arguments at trial.

8

Petitioner argues that because the state court rulings do not clearly and expressly base the disposal of this claim on a state procedural rule, there is no procedural default barring review by this Court. Indeed, precedent from the United States Supreme Court supports this position. In *Cone v. Bell*, 556 U.S. 449, 468–69 (2009), the Court wrote:

> When a state court declines to find that a claim has been waived by a petitioner's alleged failure to comply with state procedural rules, our respect for the state-court judgment counsels us to do the same. Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims . . . we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so.

The state courts did not find that this claim was procedurally barred, so this Court will not find as such either. Accordingly, the Court rejects Respondent's argument that this claim is procedurally defaulted.

### V. Claim XI, alleging discrimination in the selection of the grand jury foreperson

In this claim, Petitioner argues that he did not receive a fair trial due to the process by which grand jury foremen were selected. Petitioner claims that the process excluded African Americans and Latinos. In its Response, the State avers that Petitioner did not pursue this claim in the state proceedings and even if he had done so the claim would have been procedurally barred. Respondent argues that under La. C. Cr. P. art. 930.4(B), if an application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to the conviction, the court shall deny relief. The State further argues that this claim was raised on post-conviction and denied under La. C. Cr. P. 553. The court wrote that "objections to the grand jury are addressed by a motion to quash the indictment," which must be raised

9

in a pretrial motion. The court found that because Petitioner did not file a motion to quash the indictment on this ground, he waived this claim.

In his Reply, Petitioner writes that "[t]he ruling from the state post-conviction court that the instant claim was waived because of trial counsel's failure to file a motion to quash was in error, as the contemporaneous objection rule did not apply to capital cases at the time of Mr. Ortiz's trial in 1992." Petitioner cites *State v. Smith*, 554 So. 2d 676, 678 (La. 1989), which held that where the death penalty is involved, appellate review will consider the entire record; the court should not refuse to consider an error "simply because an appellant's lawyer did not properly raise it, as more able counsel might have." *Smith*, however, involved contemporaneous objections—objections made during the prosecutor's arguments to the jury.

*Smith* was overruled in 1996 by *State v. Taylor*, 669 So. 2d 364 (La. 1996), which held that the scope of appellate review in capital cases is limited to alleged errors occurring during the guilt phase that are contemporaneously objected to and alleged errors occurring during the sentencing phase whether objected to or not.

In sum, the Court understands Petitioner's argument to be as follows: *Smith* was good law at the time of Petitioner's trial, and *Smith* did not require contemporaneous objections to preserve an issue for appellate review; thus, the fact that Petitioner's counsel failed to raise an issue by pretrial motion does not now preclude Petitioner from raising the issue.

Petitioner is asking the Court to analogize contemporaneous objections to pretrial motions. The Court is unwilling, however, to find an error by the state court on the basis of such an analogy. The state court may have considered and declined to make such an analogy. Accordingly, because the state court clearly and expressly based its dismissal of this claim on a state

procedural rule and that procedural rule provides an independent and adequate ground for the dismissal, this claim is procedurally defaulted.

## VI. Actual innocence

As this Court stated in its first ruling on the State's procedural objections (Doc. 80), the Court cannot determine whether the actual innocence exception applies without ruling on the merits of Petitioner's actual innocence claim. The Court declines to make such a ruling at this time. Accordingly, though the Court finds that Claim IV(A)(2)(d), Claim IV(A)(2)(d), and Claim XI are procedurally defaulted, it declines to dismiss them pending the disposition of Petitioner's actual innocence claim.

## CONCLUSION

For the foregoing reasons, ruling on Respondent's procedural objections is **DEFERRED**.

New Orleans, Louisiana, this 31st day of January, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**